**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **FELIX ROCHA** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **-VS-** | § | **CIVIL ACTION NO. H-03-3639** |
| | § | |
| **DAVID DRETKE,** | § | |
| **Director, Texas** | § | |
| **Department of Criminal Justice,** | § | |
| **Institutional Division,** | § | |
| | § | |
| **Respondent.** | § | |

_____

**PETITIONER'S MOTION FOR RELIEF FROM JUDGMENT**
**PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 60(b)**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE MELINDA HARMON:

Pursuant to Rule 60(b)(5) & (6) of the Federal Rules of Civil Procedure, the Petitioner-Movant Felix Rocha asks this Court for relief from judgment in light of current facts which show that this Court's application of the doctrines of exhaustion and procedural default to Mr. Rocha's *Wiggins* claim was in error. Specifically, Mr. Rocha asks this Court, in the interest of justice, to reopen the final judgment entered on March 23, 2005, to reconsider the proper application of 28 U.S.C. § 2254(b) to his *Wiggins* claim.

As detailed in Petitioner-Movant's Certificate of Conference, *infra*, this motion is opposed.

I.      **BACKGROUND FACTS AND HISTORY OF THE CASE**

Petitioner-Movant Rocha is a Mexican national who was convicted of capital murder and sentenced to death in November 1998 in the 338th Judicial District Court of Harris County,

1

Texas.  The Texas Court of Criminal Appeals affirmed his conviction and sentence on April 1, 2000.  *Rocha v. Texas*, 16 S.W.3d 1 (Tex. Crim. App. 2000).  No petition for writ of certiorari from the direct appeal was sought from the United States Supreme Court.

On July 11, 2000, Mr. Rocha's appointed state post-conviction counsel filed a document entitled "Incomplete Application for Habeas Corpus Relief" raising several direct appeal claims not cognizable in habeas, and headings of other claims with no accompanying law, factual support or any discussion.  The claims alleged by caption alone included allegations of *Brady* violations and ineffective assistance of counsel at punishment and guilt phases.  On December 13, 2000, Mr. Rocha's appointed state habeas counsel filed a "Memorandum in Support of Original Application for Habeas Corpus Relief."  In that document, counsel raised only claims with no extra-record evidence—and apparently abandoned the claims previously mentioned only in section headings.  This document was tantamount to a second direct appeal.  In an appendix filed concurrently, counsel included three items for review:  the direct appeal decision affirming the verdict and death sentence, an excerpt from a police report and a printout of Mr. Rocha's criminal history from the Harris County online case summary information.  Counsel raised no claims premised on extra-record evidence and the application demonstrated an absence of investigation or, indeed, an understanding of the purpose of habeas.

The trial court recommended a denial of Mr. Rocha's application and the Texas Court of Criminal Appeals denied Mr. Rocha's application for writ of habeas corpus on September 11, 2002.  *Ex parte Rocha*, No. 52,515-01 (Tex. Crim. App. 2002) (not designated for publication).

Mr. Rocha filed his initial federal habeas petition (Docket No. 15) in the United States District Court for the Southern District of Texas on September 10, 2003.  In that petition he

2

raised an ineffective assistance of counsel of claim, a very strong claim that was ultimately procedurally barred because state habeas counsel had failed to investigate or develop any evidence of Mr. Rocha's social history.  Counsel's failures included the failure to investigate Mr. Rocha's birth and upbringing extreme poverty in Michoacan, Mexico, the violence and alcohol abuse by his father that pervaded his early life, his mother's abandonment of him to the care of abusive and addicted relatives, his lack of formal education, and strong evidence of developmental disabilities.

This Court, although prevented from addressing the merits of Mr. Rocha's claim because of the previous failure of appointed state habeas counsel, noted that the mitigation evidence presented in federal habeas might well have impacted the jury. Memorandum Opinion & Order, at 17, *Rocha v. Dretke*, No. H-03-CV-3639 (S.D. Texas Mar. 24, 2005) (Docket No. 38).

Mr. Rocha filed a notice of appeal (Docket No. 44), but his status as a Mexican national named in Mexico's litigation in the International Court of Justice with regard to the United States' failure to abide by the Vienna Convention on Consular Relations caused his appeal to be stayed while he pursued various legal remedies as a result of that litigation.[1]   On March 20, 2006, a panel of the United States Court of Appeals for the Fifth Circuit entered a stay of proceedings so that Mr. Rocha could return to state court for resolution of his to exhaust his Vienna Convention claim as a consequence of President Bush's directive[2] that the courts give the Mexican nationals named in the *Avena* Judgment the opportunity for review and reconsideration

---

[1]    *See Avena and Other Mexican Nationals (Mex. v. U.S.),* 2004 I.C.J. 1 (No. 128) (Mar. 31) ("*Avena* Judgment").

[2]    *See* George W. Bush, Memorandum for the Attorney General (Feb. 28, 2005), App. 2 to Brief for United States as *Amicus Curiae*, *Medellin v. Dretke* (No. 04-5928).

of their claims.  Subsequently, on May 14, 2007, a panel of the Fifth Circuit continued the stay as a result of the grant of certiorari in *Medellin v. Texas*, 127 S.Ct. 2129 (2007) (certiorari grant), *decided*, 128 S.Ct. 1346 (2008).[3]

A panel of the Fifth Circuit entered a third stay on July 10, 2008, as a result of a change in the jurisprudence of the Texas Court of Criminal Appeals.  While Mr. Rocha's petition for certiorari on the Vienna Convention claim was pending, the Court of Criminal Appeals' successor habeas jurisprudence altered in such a way as to indicate the availability of a new remedy for exhausting his previously unexhausted *Wiggins* claim.[4]  However, due to the then-pending petition for certiorari, Mr. Rocha could not initiate subsequent litigation in the CCA. *See Penry v. Coker*, Cause No. 15918-03, 2003 WL 1845158 (Tex.Crim.App. Mar. 9, 2003) (Womack, J., concurring) (not designated for publication) ("I agree that, in accordance with our

---

[3]     Like Mr. Medellin, Mr. Rocha sought in 2006 to file a subsequent petition for writ of habeas corpus in Texas state court based on the developments subsequent to the International Court of Justice's decision in *Case Concerning Avena and Other Mexican Nationals (Mex. v. U.S.)*, I.C.J. No. 128 (judgment of Mar.31, 2004).  Four months after the Texas Court of Criminal Appeals refused, in *Ex parte Medellin*, 223 S.W.3d 315 (Tex. Crim. App. 2006), to give effect to the *Avena* judgment, the CCA cited its decision in *Medellin* and rejected Petitioner-Movant Rocha's application to file a subsequent petition for writ of habeas corpus.  *Ex parte Rocha*, No. WR-52,515-03 (Tex. Crim. App. Mar. 7, 2007) (unpublished).  Mr. Rocha then petitioned for writ of certiorari, which was denied on March 31, 2008, three days after the Supreme Court denied relief in *Medellin v. Texas*, 128 S.Ct. 1346 (2008). *Rocha v. Texas*, 128 S. Ct. 1735 (2008).

[4]     *See, e.g., See Ex parte Ruiz*, slip op. at *1-*2, No. WR-27-328-03 (Tex. Crim. App. 2007) (Womack, J., concurring) (stating that equitable exceptions to procedural bar may exist); *Ex parte Moreno*, No. WR-25,897-01, 2007 WL 2019744 (Tex. Crim. App. 2007) (re-opening of original habeas case some seven years after initial denial and in order to take up *Penry* claim); *Ex parte Hood*, 211 S.W.3d 767 (Tex. Crim. App. 2007) (allowing subsequent authorization of *Tennard* claim, despite its previously having been presented and denied, because the legal basis for the original denial had been overruled and the basis for the subsequent authorization was now "newly available").

Also in 2007 and for the first time, the Court of Criminal Appeals explained that a dismissal under Section 5(a)(1) is based, in part, upon an analysis of the merits of the alleged federal constitutional claim. *See Ex parte Campbell*, 226 S.W.3d 418, 421 (Tex. Crim. App. 2007).  A majority of the court for the first time expressly stated that the state procedural bar based on factual unavailability inherently required the CCA to determine whether the application "establish[es] a federal constitutional violation sufficiently serious as to likely require relief from his conviction or sentence." *Id.* In so holding, the CCA undermined the well-settled belief that the Texas state procedural bar was adequate and independent and acknowledged that, even in non-*Atkins* and non-*Penry* cases, its analysis of a state procedural bar necessarily entails a determination of whether there a meritorious federal constitutional violation has been alleged.

usual practice of abstention, we should deny leave to file while the movant's petition for a writ of certiorari on the same subject is pending in the Supreme Court of the United States").

The very day after his petition for certiorari was denied, Mr. Rocha on April 1, 2008, filed a successor petition with the trial court and the Court of Criminal Appeals. This petition sought review of the unexhausted *Wiggins* claim and provided a factual and legal defense to the state procedural bar and presenting the Court of Criminal Appeals with a non-statutory basis for excusing its subsequent status. Application attached as Exhibit 1. On May 22, 2008, the state trial court entered an order sending the subsequent application to the Court of Criminal Appeals for a determination of whether the requirements in Section 5(a) of Article 11.071 of the Texas Code of Criminal Procedure have been met. On December 17, 2008, the Court of Criminal Appeals applied a purported statutory bar to Mr. Rocha's successive state habeas application, and denied his application for leave to litigate his *Wiggins* claim in state court. *Ex parte Felix Rocha,* No. WR-52,515-04 (Tex. Crim. App. Dec. 17. 2008) (not designated for publication). Order, attached as Exhibit 2.

Petitioner-Movant Rocha now files this motion pursuant to Rule 60(b)(5) & (6) of the Federal Rules of Civil Procedure and asks this Court, in the interest of justice, to reopen the final judgment entered on March 23, 2005, to reconsider the proper application of 28 U.S.C. § 2254(b) to his *Wiggin* claim.

## II.   FED. R. CIV.P. 60(b) IS THE APPROPRIATE PROCEDURAL MECHANISM FOR THE LITIGATION OF MR. ROCHA'S CLAIMS

Under Article III of the U.S. Constitution federal courts have inherent "power over [their] own judgments." *United States v. Ohio Power Co.*, 353 U.S. 98, 99 (1957) (*per curiam*). A vehicle

for exercise of this power is Fed.R.Civ.P. 60(b)(6), which "[i]n simple English … vests power in courts adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice." *Klaprott v. United States*, 335 U.S. 601, 615 (1949).

Rule 60(b) "does not provide a new remedy at all," but rather is "simply the recitation of pre-existing judicial power." *Plaut v. Spendthrift Farm Inc*., 514 U.S. 211, 234-235 (1995).  That judicial power includes the inherent power to set aside judgments that are unfair: "Rule 60(b) … reflects and confirms the court's own inherent and discretionary power, firmly established in English practice long before the foundation of our Republic, to set aside a judgment whose enforcement would work inequity."  *Plaut*, 514 U.S. at 233-234 (quoting *Hazel-Atlas Glass Co. v. Hartford-Empire Co*., 322 U.S. 238, 244 (1944)).  *See also United States v. Ohio Power Co*., 353 U.S. 98 (1957) (*per curiam*) (court denied second petition for rehearing seven months after case became final through denial of initial rehearing petition, but then later granted petition for writ of *certiorari*); *id.* at 104 (Harlan, J., dissenting) (acknowledging that court's action granting *certiorari* after decision had previously become final based on "the Court's inherent power over its judgments").

As a "recitation of pre-existing judicial power" (*Plaut*), Rule 60(b) applies to habeas proceedings, just as it applies to all federal judicial proceedings when there is a claim that the federal judgment should be reconsidered in the interest of justice.  *See Rodriguez v. Mitchell*, 252 F.3d 191 (2d Cir. 2001) (Rule 60(b) motions exist in habeas to remedy error in federal judgment); *compare Browder v. Director, Dept. of Corrections of Illinois*, 434 U.S. 257 (1978) (specifically holding that Fed.R.Civ.P. 52 and 59 apply to habeas proceedings, and implicitly holding that Rule 60 applies as well).

In the habeas context, however, a 60(b) motion is only proper to the extent it is not inconsistent with the AEDPA. *Gonzalez v. Crosby*, 545 U.S. 524, 529 (2005). Thus, any 60(b) motion that seeks to present a "claim" contravenes the AEDPA strictures on successive petitions and is not appropriate. *Id*. at 531. A motion which "merely asserts that a previous ruling which precluded a merits determination was in error—for example, a denial for such reasons as failure to exhaust, procedural default, or statute-of-limitations bar" is not an assertion of a "claim" and thus is a proper subject of a 60(b) motion in habeas. *Id*. at 532 n.4.

Under the unique circumstances of this case, relief from judgment is "appropriate to accomplish justice." *Klaprott*, 335 U.S. at 615. Enforcement of the prior judgment "would work inequity" not only on Mr. Rocha, but on the fair and orderly administration of justice in the context of federal habeas corpus proceedings. *Plaut*, 514 U.S. at 233-234. Absent relief from judgment, Mr. Rocha will be "subjected to substantial injustice." *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 881 (Rehnquist, C.J., dissenting). That injustice would be the lack of judicial review of the merits of his *Wiggins* claim. Mr. Rocha is therefore entitled to the relief he seeks.

Furthermore, Rule 60(b) motions are favorably entertained where they serve to properly avoid a default judgment. "This court applies Rule 60(b) 'most liberally to judgments in default ... [because] ... [t]runcated proceedings of this sort are not favored.... ***Thus, unless it appears that no injustice was done by the judgment, the equities in such cases will militate strongly in favor of relief.***'" *Harrell v. DCS Equipment Leasing Corp.*, 951 F.2d 1453, 1459 (5th Cir. 1992) (quoting *Seven Elves*, 635 F.2d at 403) (emphasis supplied); *see also Broussard v. Johnson*, 254 F.3d 71 (5th Cir. 2001) ("We construe rule 60(b) liberally to ensure that close cases are resolved on the merits."); *Halicki v. La. Casino Cruises, Inc.*, 151 F.3d 465, 471 (5th Cir. 1998). "[W]here denial of [60(b)]

relief precludes examination of the full merits of the cause, even a slight abuse may justify reversal."

*Seven Elves, Inc. v. Eskenazi,* 635 F.2d 396, 403 (5th Cir. 1981).[5]

## III.   IN MR. ROCHA'S SUBSEQUENT APPLICATION, THE STATE COURT'S DECISION WAS NOT BASED ON AN ADEQUATE OR INDEPENDENT STATE GROUND AND THUS THIS COURT IS NOT PREVENTED FROM RULING ON THE MERITS OF HIS *WIGGINS* CLAIM.

When Mr. Rocha presented his IAC-punishment phase claim to this Court in his habeas petition, the Court correctly understood that the claim had not at that time been exhausted by presentation to a state court.  Despite the potentially meritorious nature of this claim, this Court held that the claim was procedurally defaulted, Mr. Rocha had not shown cause and prejudice for the default, or that he is actually innocent of the death penalty. Memorandum Opinion & Order, at 15-16, *Rocha v. Dretke*, No. H-03-CV-3639 (S.D. Texas Mar. 24, 2005) (Docket No. 38).

Mr. Rocha has now presented his claim to the state court.  His treatment by the state court demonstrates that this Court's assumptions about the effect of his return to state court were not entirely correct.[6]  In fact, the CCA's treatment of Mr. Rocha's claim does not now preclude merits review by this Court.  Although the state court still purported to dismiss Mr. Rocha's application as "an abuse of the writ" under Section 5 of the Texas Code of Criminal Procedure, the decision does

---

5        The judgment from which Mr. Rocha sought relief is not a default judgment, but the same principles expressed by the *Seven Elves* Court apply, and for the same reasons. Default judgments that preclude merits review are not favored and, similarly, application of a procedural default to a potentially meritorious constitutional claim for habeas relief are likewise not favored where avoidable.  *See, e.g., Michigan v. Long*, 463 U.S. 1032, 1041 (1983) (requiring "clear and express" reliance on state law ground to preclude federal merits review); *Prieto v. Quarterman*, 456 F.3d 511, (5th Cir. 2006) (a court should not lightly *sua sponte* apply a procedural default in a habeas corpus proceeding).  Indeed, *Seven Elves* itself did not concern what the Court determined to be a default judgment, but merely a judgment that "[bore] many of the characteristics of a default judgment," primarily the fact that it "seem[ed] clear that the full merits of the cause were not examined."  *Seven Elves*, 635 F.2d at 403.  Because the merits of Mr. Rocha's potentially meritorious constitutional claim were never reached by this Court, his case bears characteristics of a default judgment and he should be entitled to 60(b) relief.

6        Mr. Rocha does not by this mean to suggest that the Court somehow erred or acted unreasonably when it assumed that the Texas courts would not consider the merits of his application.  Petitioner-Movant means only that,

8

not in fact constitute an unambiguous independent state ground that would preclude federal review. Because the CCA's dismissal is not a true independent procedural bar, this Court is no longer prohibited from reaching the merits of Mr. Rocha's *Wiggins* claim and should grant his 60(b) in order to examine the merits of his claim.

A.   **This Court Cannot Assume that the CCA's Dismissal was Independent of State Law.**

1.   **The Adequate and Independent Legal Framework**

A federal court reviewing a state court judgment may not reach the merits of the claim where a prior state reviewing court applied an independent and adequate state law ground to deny relief. *Coleman v. Thompson*, 501 U.S. 722 (1991). To make the determination of whether a state court's resolution of a claim is based on an independent and adequate state ground, a federal court naturally looks to the state court's decision. "When … a state court decision ***fairly appears*** to rest primarily on federal law, ***or to be interwoven with the federal law***, and when the adequacy and independence of any possible state law ground is ***not clear*** from the face of the opinion, we will accept as the most reasonable explanation that the state court decided the case the way it did because it believed that federal law required it to do so." *Michigan v. Long*, 463 U.S. 1032, 1040-41 (1983) (emphasis supplied); *see also Coleman v. Thompson*, 501 U.S. 722, 733 (1991) (reaffirming the *Long* principle).

When resolution of a state procedural law question depends upon a predicate federal constitutional ruling, the state-law prong of the court's holding is not independent of federal law, and a federal court may address the merits of the claim. *Ake v. Oklahoma*, 470 U.S. 68, 75 (1985); *Smith v. Texas*, 550 U.S. 297, 127 S.Ct. 1686, 1698 (2007) (a state court's predicate "error of federal law"

---

whereas during the prior proceedings all this Court could do was assume, it is now known what would have happened *in*

in resolving a state procedural question does not preclude federal review); *Delaware v. Prouse*, 440 U.S. 648, 652-653 (1979) (state court decision is not based on an independent state ground where the resolution of a state law question involves an interpretation of what federal law requires to state a claim for relief). Under these circumstances, the federal court may review the claim because "[i]f the state court misapprehended federal law, '[i]t should be freed to decide . . . these suits according to its own local law,'" and not under a mistaken interpretation of federal law. *Prouse*, 440 U.S. at 653 (quoting *Missouri ex rel. Southern R. Co. v. Mayfield*, 340 U.S. 1, 5 (1950)).

In short, when a state procedural law question depends, in part, on resolution of a federal constitutional question, a presumption exists that a state court decision is *not* based upon an independent and adequate state ground if the state court does not ***clearly and expressly*** state that its decision is "based on bona fide separate, adequate, and independent grounds." *Long*, 463 U.S. at 1041. *See also Coleman*, 501 U.S. at 733; *Harris v. Reed*, 489 U.S. 255, 266 (1989); *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985). As the Supreme Court explained in *Coleman*:

> [F]ederal courts on habeas corpus review of state prisoner claims, like this Court on direct review of state court judgments, ***will presume*** that there is no independent and adequate state ground for a state court decision when the decision "fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion." In habeas, if the decision of the last state court to which the petitioner presented his federal claims fairly appeared to rest primarily on resolution of those claims, or to be interwoven with those claims, and did not clearly and expressly rely on an independent and adequate state ground, a federal court may address the petition.

*Coleman*, 501 U.S. at 734-35 (citations omitted and emphasis supplied). Federal law thus places the burden on the state court to clearly and expressly show the state-law ground of decision if federal review of a claim is to be precluded.

---

*fact*, and what happened *in fact* does not accord with the assumption made, although reasonable at the time.

To bar federal review, the state procedural rule must also be "adequate." To be adequate, the rule must be "firmly established and regularly followed." *Ford v. Georgia*, 498 U.S. 411, 424 (1991). "Only a firmly established and regularly followed state practice may be interposed by a State to prevent subsequent review . . . of a federal constitutional claim." *Ford v. Georgia*, 498 U.S. 411, 424 (1991) (*citing James v. Kentucky*, 466 U.S. 341 (1984) (internal quotation marks omitted)). *See also Barr v. City of Columbia*, 378 U.S. 146, 149 (1964) (state procedural rules "not strictly or regularly followed" may not bar federal review); *Rosales v. Dretke*, 444 F.3d 703, 707 (5th Cir. 2006) ("If the state law ground is not firmly established and regularly followed, there is no bar to federal review and a federal habeas court may go to the merits of the claim.").

The adequacy of a procedural ground invoked by a state court is a question of federal law, which can and must be resolved by the federal court itself *de novo*. *Johnson v. Mississippi*, 486 U.S. 578, 587 (1988) ("[W]e have consistently held the question of when and how defaults in compliance with state procedural rules can preclude our consideration of a federal question is itself a federal question"); *see also Rosales v. Dretke*, 444 F.3d 703, 707 (5th Cir. 2006) ("The adequacy of a state law ground to preclude federal court review of federal constitutional claims is a federal question…").

Federal courts may not defer to state courts which exploit flux and inconsistencies in their own law in order to deny inmates meaningful review of federal claims unpredictably. *See, e.g.*, *Gosier v. Welborn*, 175 F.3d 504, 507 (7th Cir. 1999) (state court rule inadequate because state courts applied it inconsistently in "incompatible lines of authority," resulting in a "wavering course of state law" that gave defendants no meaningful notice of procedural requirements); *Martin v. Maxey*, 98 F.3d 844, 848 (5th Cir. 1996) (state rule inadequate when state court failed to enforce it in cases similar to petitioner's). The Supreme Court has emphasized that procedural rules bar federal review

only when there is no doubt about the existence of the rule and its applicability to the defendant's conduct in the particular case.  *See Lee v. Kemna*, 534 U.S. 362, 377 (2002) (failure to lodge objection when error of judge's ruling was "not in doubt" constituted valid procedural bar).

> **2.      The CCA's Dismissal of Mr. Rocha's *Wiggins* Claim Does Not Preclude Merits Review By This Court.**

In an unsigned *per curiam* order, the disposed of all of Mr. Rocha's claims by simply stating:

> We have reviewed the application and find that the allegations do not satisfy the requirements of Article 11.071, Section 5(a)(3).  Accordingly, this application is dismissed as an abuse of the writ.

Exh. 2 (*Ex parte Rocha* Order), at 2.

This dismissal fails to properly assert an independent state procedural bar for three reasons: 1) the language of dismissal does not unambiguously state its independence from federal law; 2) the section of the state statute upon which the CCA's dismissal relied, by its own language, incorporates an analysis of federal law; and 3) the CCA's boilerplate order fails to clarify whether its dismissal relied upon its jurisprudence recognizing the existence of a non-statutory remedy, one which incorporates review of federal law.

> **a.      Because the CCA Did Not Clearly State the Basis for Its Dismissal of Mr. Rocha's *Wiggins* Claim, This Court Must Presume It Can Review the Merits of His Claim.**

Prior to 2007, there was virtually unanimous agreement in the courts that an order such as the one in Mr. Rocha's case was facially adequate and independent.  In 2007, however, the Texas Court of Criminal Appeals explained its interpretation of the state procedural bar found in Article 11.071, Section 5, of the Texas Code of Criminal Procedure and explicitly held that review of successive applications for habeas relief encompass a review of whether there is an "antecedent showing of

'sufficient specific facts'" of a federal constitutional claim to merit further review.

In *Ex parte Campbell*, 226 S.W.3d 418 (Tex. Crim. App. 2007), the CCA made clear how it conducts a Section 5(a) assessment of a subsequent application where it is alleged that the facts were not available at the time the prior application was filed:

> To satisfy section 5(a)(1), a subsequent application must contain sufficient specific facts establishing that "the current claims and issues have not been and could not have been presented previously in a timely initial application or in a previously considered application filed under this article or Article 11.07 because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application." We have interpreted this to mean that, to satisfy Art. 11.071, § 5(a), 1) the factual or legal basis for an applicant's current claims must have been unavailable as to all of his previous applications; and 2) *the specific facts alleged, if established, would constitute a constitutional violation that would likely require relief from either the conviction or sentence*.

*Id.* at 421 (emphasis added).

In other words, despite absence of such language in the state's successor statute, the CCA's subsequent writ jurisprudence entails a ruling on whether a meritorious federal claim has been alleged.  As the CCA held in *Campbell*, "Applicant also must jump over the rest of the section 5(a)(1) bar. That is, his application must allege sufficient specific facts that, if proven, **establish a federal constitutional violation sufficiently serious as to likely require relief from his conviction or sentence**."  *Id*. at 422 (emphasis added and internal footnote omitted).

Mr. Rocha argued to the CCA that he should be allowed to proceed in state court on his *Wiggins* claim based on equitable principles and because he alleged facts which, if proven, would establish violations of the United States Constitution.  Mr. Rocha's application was, in fact, dismissed pursuant to Section 5.  However, because Section 5 includes a federal component and because characterizing the dismissal as an abuse of the writ does not of its own force constitute an

13

independent and adequate state law ground, review of the CCA's order here does not end the inquiry. As discussed above, federal law places the burden on the state court to clearly and expressly show the state-law ground of decision if federal review of a claim is to be precluded. By issuing a brief order that simply stated Mr. Rocha's *Wiggins* claim was barred by Section 5, the CCA failed to "clearly and expressly" demonstrate that the basis of its decision was a state procedural rule rather than the federal component of Section 5 acknowledged in *Ex parte Campbell*, *supra*.

As the Fifth Circuit explained in *Ruiz v. Quarterman*, 504 F.3d 523 (5th Cir. 2007):

> This settled principle [of adequate and independent state procedural bars] gives to state courts control over the federal review of their opinions. It has become a rote rule at the fingertips of every writing member of state courts of last resort-where studied ambiguity or clarity in the decisional footing is an art form and an absence of clarity in an opinion is seldom inadvertent. Calibrated uncertainty can play a mediating role in garnering support for an outcome. To the point, that the CCA did not make clear that its decision rested on an independent state ground opens the merits of Ruiz's *Wiggins* claim to federal review. At best, the CCA did not make clear whether it relied on state or federal law in dismissing Ruiz's application. As the CCA is keenly aware, its choice of language was made against a background legal standard-which directs the CCA in either granting an application for consideration of subsequent claims or dismissing that application as an abuse of the writ-that is interwoven with federal law.

> The Texas Code of Criminal Procedure, as interpreted by the CCA, provides for subsequent applications where (1) the factual or legal basis for the subsequent claim was previously unavailable and (2) where the facts alleged would constitute a federal constitutional violation that would likely require relief from either the conviction or sentence. The boilerplate dismissal by the CCA of an application for abuse of the writ is itself uncertain on this point, being unclear whether the CCA decision was based on the first element, a state-law question, or on the second element, a question of federal constitutional law.

*Id* at 527 (internal citations omitted).

The CCA in Mr. Rocha's case could have – as the Fifth Circuit noted in *Ruiz* – clearly stated, if it choose to do so, that it was rejecting Mr. Rocha's claim on an independent state law basis. It did

14

not, and merely issued a boilerplate order that failed to clearly and expressly state the basis of the

dismissal.  Because a Section 5 dismissal is, according to the CCA's own explanation in *Ex parte*

*Campbell*, necessarily interwoven with federal law, this Court must presume the dismissal is not

independent and must therefore review the merits of the *Wiggins* claim in Mr. Rocha's Petition for a

Writ of Habeas Corpus.

> **b.    Because the Plain Language of Section 5(a)(3) of Article 11.071 of the
> Texas Code of Criminal Procedure Requires a Federal Constitutional
> Determination, a Boilerplate Dismissal by the CCA Cannot be Presumed
> to Be Independent of Federal Law.**

Section 5(a)(3) of the Article 11.071 of the Texas Code of Criminal Procedure states that a

subsequent petition for writ of habeas corpus may not be considered unless the application

establishes, "by clear and convincing evidence," that "no rational juror would have answered in the

state's favor" at the punishment phase of a capital trial "but for a violation of the United States

Constitution."  The plain language of the statute therefore directs the Court of Criminal Appeals to

evaluate a subsequent application on federal constitutional grounds.  Therefore, where there are no

further explanations from the state court, a federal court cannot presume that a boilerplate dismissal

order – such as exists here – is independent of federal law.

For a Texas Court of Criminal Appeals' dismissal pursuant to Section 5 to be independent of

federal law, the CCA must "clearly and expressly" rely upon an independent state ground.  *Emery v.*

*Johnson*, 139 F.3d 191, 195 (5th Cir. 1997).  The CCA could have articulated a state ground as its

reason for dismissing Mr. Rocha's application under Section 5(a)(3) of Article 11.071 but it did not.

Rather, the Court's Order stated, "We have reviewed the application and find that the allegations do

not satisfy the requirements of Article 11.071, Section 5(a)(3)." *Ex parte Rocha*, Cause No. WR-52,515-04 (Tex. Crim. App. Dec. 17, 2008).

In the absence of a specific statement as to why the CCA barred the subsequent application, this Court cannot be certain the CCA's action was independent of federal law.  Indeed, the citation to Section 5(a)(3) in the Order suggests the very opposite, particularly in view of Section 5(a)(3)'s directive that subsequent applications be evaluated on federal constitutional grounds.  Accordingly, this Court cannot presume that the Court of Criminal Appeals dismissed Mr. Rocha's application on independent state grounds and must review the merits of Mr. Rocha's *Wiggins* claim.

> **c.      Because the CCA has Recognized that There is an Equitable Exception to the Section 5 Bar and Mr. Rocha Sought such an Exception, the CCA's Determination is Ambiguous and Should not be Presumed to be Independent of Federal Law.**

In his state court filing, Mr. Rocha sought an equitable exception to the Section 5 bar because his initial appointed state habeas lawyer failed to act as meaningful counsel under Article 11.071 and develop the facts underlying the *Wiggins* claim.  In support, Mr. Rocha showed that, while his state habeas counsel initially filed a skeletal writ that included a section heading that asserted that trial counsel provided ineffective assistance at punishment, state habeas counsel never sought to develop the facts underlying that claim.  Indeed, the state court record is devoid of any extra-record evidence regarding trial counsels' performance in the punishment phase of Mr. Rocha's case.  None of  state habeas counsel's subsequent filings included any extra-record evidence regarding this claim and, as a result, it appeared that state habeas counsel abandoned that skeletal claim, along with several other claims made in headings in the skeletal writ.

In seeking an equitable exception to the Section 5 bar, Mr. Rocha argued that: (1) his state habeas counsel's performance was not the meaningful performance mandated by the Article 11.071; (2) the Texas Legislature intended to give the CCA broad authority to protect a death-sentenced prisoner's right to federal habeas review especially where, as here, his initial state habeas counsel did not protect that right; (3) the Texas Constitution's Open Courts provision at Article 1, Section 13, empowers the CCA to provide subsequent habeas review in cases where, as here, initial habeas counsel has not provided meaningful representation and has vitiated the prisoner's state-constitution-guaranteed right of access to the state courts; and (4) Article 1, Section 29 of the Texas Constitution grants the CCA the power to create a judicial remedy to protect against suspension of the writ of habeas corpus.

### i.     The Development of the Equitable Exception Framework to Section 5 of Article 11.071

Starting in early 2007, the Court of Criminal Appeals has issued a series of decisions that recognizes that there is an equitable exception to Section 5(a)(1).  The first decision was *Ex parte Granados*, No. WR-51,135-01 (Tex. Crim. App. Jan. 10, 2007), in which a prisoner whose prior appointed habeas counsel failed to raise a single cognizable claim made alternative requests that the judgment denying his previous application be vacated to facilitate the filing of a new application, or that the previous application be reheard with new claims added. Although the Court of Criminal Appeals denied these requests, it did so not on the ground that Article 11.071 prohibits such relief, but on the ground that the applicant had failed to identify any new claims for habeas relief to be raised in a new or reopened application.  *See Granados*, No. WR-51,135-

01 at 5.  In so ruling, the Court implied that a more fully developed request could have resulted in

reconsideration of the earlier decision denying relief, or in some other remedy.

Decided on the same day as *Granados*, *Ex parte Hood*, 211 S.W.3d 767 (Tex. Crim. App.

2007), reinforced the suggestion that judicially created equitable exceptions to the Section 5

requirements are possible.  In *Hood*, the Court of Criminal Appeals confronted a subsequent

application raising a challenge based on *Tennard v. Dretke*, 542 U.S. 274 (2004), to the

"constitutional relevance" test for mitigating evidence that had already been rejected in a prior

application brought by the same prisoner.  Notwithstanding Section 5's explicit prohibition on

claims "presented previously," the Court held that the legal basis for a claim – even one rejected

in an earlier application – "can become newly available" when prior law governing the claim is

overruled. *Hood*, 211 S.W.3d at 776.

Four months after *Hood*, the Court of Criminal Appeals was presented in *Ex parte*

*Moreno*, No. WR-25,897-01, 2007 WL 2019745 (Tex. Crim. App. May 10, 2007), with a

previously rejected claim whose merits had been affected by the Supreme Court's decisions in

*Abdul-Kabir v. Quarterman*, 127 S.Ct. 1654 (2007), and *Brewer v. Quarterman*, 127 S.Ct. 1706

(2007).  After initially dividing 4-4 and indicating that no action would be taken on the case,

Order, *Ex parte Moreno*, No. Wr-25,897-03 (Tex. Crim App. 2007), the Court took the

unprecedented step on rehearing of reopening the original habeas action, which had been denied

nearly seven years earlier,  *Ex parte Moreno*, No. WR-25,897-01, 2007 WL 2019745 (Tex. Crim.

App. May 10, 2007).

On July 6, 2007, the Court of Criminal Appeals was again confronted, in *Ex parte Ruiz*,

WR-27,328-03 (July 6, 2007) (*per curiam*), with a request for relief from the consequences of

habeas representation by incompetent appointed counsel.  Invoking the Court of Criminal Appeals' equitable authority and its powers under the Texas Constitution, Ruiz urged that Section 5 not be applied to his subsequent application for habeas relief because doing so would deprive him of a remedy for his trial counsel's ineffectiveness solely because of his previous habeas counsel's incompetence.  Ruiz further argued, in the alternative, that his ineffective assistance of trial counsel claim satisfied Section 5's unavailability requirement because prior habeas counsel's dereliction of his responsibilities left Ruiz unable to discover or develop the basis of the claim.

Four of the seven participating judges of the Court of Criminal Appeals dismissed Ruiz's subsequent writ application as an abuse of the writ on the bare ground that his claims "do not meet the requirements for consideration of subsequent claims under Article 11.071, Section 5." Order, *Ex parte Ruiz*, WR-27,328-03 (Tex. Crim. App. July 6, 2007) (*per curiam*). The other three participating judges, however, brought the equitable considerations reflected in *Granados*, *Hood* and *Moreno* into sharper focus.  In a statement accompanying the order of dismissal, Judge Womack acknowledged Ruiz's argument that "the restriction on subsequent applications cannot be used to leave an applicant without a remedy" and called it "a serious and unresolved question," but found that deficiencies in Ruiz's merits allegations obviated the need to reach it in his case. *Ex parte Ruiz*, WR-27,328-03 (Tex. Crim. App. July 6, 2007) (Womack, J., statement respecting dismissal of application).  In a separate statement dissenting from the majority's order of dismissal, Judge Holcomb, joined by Judge Johnson, articulated the view that "this applicant should at least have been given a chance to be fairly heard at this, literally final, stage of his

proceedings." *Ex parte Ruiz*, WR-27,328-03 (Tex. Crim. App.  July 6, 2007) (Holcomb, J.,

dissenting).

> **ii.**     **Although Mr. Rocha Diligently Sought an Equitable Exception to Section 5(a) of Article 11.071, the CCA's Order Did Not Address This Issue in its Order, which is, Therefore, Ambiguous and Not Entitled to the Presumption that the Court's Determination is Independent of Federal Law.**

Mr. Rocha's Section 5 application was filed as soon as he was legally able to do so.  The

CCA's jurisprudence with regard to the equitable exception to the Section 5 bar developed while

Mr. Rocha was litigating his Vienna Convention claim.  When *Ex parte Ruiz* was decided on July

6, 2007, Mr. Rocha was seeking writ of certiorari with regard to his efforts to obtain relief based

on the *Avena* Judgment.  As a result of that then-pending petition for certiorari, Mr. Rocha could

not initiate subsequent litigation in the CCA.  *See Penry v. Coker*, Cause No. 15918-03, 2003

WL 1845158 (Tex.Crim.App. Mar. 9, 2003) (Womack, J., concurring) (unpublished) ("I agree

that, in accordance with our usual practice of abstention, we should deny leave to file while the

movant's petition for a writ of certiorari on the same subject is pending in the Supreme Court of

the United States").

Mr. Rocha's petition for certiorari was denied on March 31, 2008.  *Rocha v. Texas*, 128

S. Ct. 1735 (2008).   The very next day, on April 1, 2008, he filed a successor application seeking

review of the unexhausted *Wiggins* claim with the trial court and the Court of Criminal Appeals.

This application also articulated the equitable basis for an exception to the Section 5 bar.  Exh. 1

(Application), at 32-38.

The Court of Criminal Appeals' jurisprudence is clear that it does recognize equitable

exceptions to the Section 5 bar.  Moreover, Mr. Rocha presented the court with not one but several

bases upon which the CCA could find the existence of an equitable exception to Section 5 of Article 11.071.  Because the CCA's boilerplate order did not refer to any of these bases in its Order of December 17, 2008, the state court's determination is ambiguous and cannot be presumed to be independent of federal law.

Because the CCA decision is ambiguous, no federal procedural bar prevents this Court from reviewing the merits of the state court judgment. The State of Texas has so far forfeited Mr. Rocha's rights to a fair trial and federal habeas review by providing incompetent representation at trial and then in state habeas. The State of Texas should not be allowed to again thwart federal review by issuing an order which does not clearly and expressly rest its judgment on undeniably independent state grounds.

## CONCLUSION

WHEREFORE, Petitioner-Movant Felix Rocha prays that this Court:

1.   Reopen, in the interest of justice, the final judgment entered on March 23, 2005;

2.   Grant an evidentiary hearing and/or further proceedings necessary to provide *de novo* review of the merits of his *Wiggins* claim; and

3.   Grant such other relief as the ends of justice may require.

Dated: December 24, 2008          Respectfully submitted,
      Houston, TX

                                    Kathryn M. Kase
                                    Texas Bar No. 11104050
                                    TEXAS DEFENDER SERVICE
                                    412 Main Street, Suite 1150
                                    Houston, TX  77002
                                    Voice: (713) 222-7788
                                    Fax: (713) 222-0260

                                    *Counsel for Petitioner*

## CERTIFICATE OF CONFERENCE

I hereby certify that at 6:54 p.m. on December 23, 2008, I left a voice mail message with the Capital Litigation Division of the Texas Attorney General that advised that I wish to determine if Assistant Attorney General Ana M. Jordan opposed this motion.  On December 24, 2008, at 9:54 a.m., I e-mailed Ms. Jordan to determine the same.  I advised that if I did not receive any response by 5 p.m., I would assume that she opposed the motion.  I did not receive any response and therefore conclude that this motion is opposed.

## CERTIFICATE OF SERVICE

I hereby certify that on December 24, 2008, a copy of this Motion For Relief From Judgment Pursuant To Federal Rules Of Civil Procedure 60(b), the attached two exhibits, and proposed Order were served on Counsel for the Respondent, who is identified below, via CM/ECF:

>Ana M. Jordan
>Assistant Attorney General
>Office of the Attorney General
>Capital Litigation Division
>Price Daniel, Sr. Building 7th Floor
>209 W. 14th St.
>Austin TX, 78701

Kathryn M. Kase